[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14074

_____

D.C. Docket No. 3:09-cv-14157-WGY-HTS

BERNARD COTE, as Personal Representative of the
Estate of Judith Berger,

Plaintiff-Appellee,

versus

PHILIP MORRIS USA, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 19, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

MARTIN, Circuit Judge:

Philip Morris USA, Inc. ("Philip Morris"), a cigarette company, appeals the

District Court's order denying its motion for a new trial or to reduce the punitive

damages award in favor of Judith Berger.  Mrs. Berger sued Philip Morris based on

her smoking-related injuries.  A jury awarded her $6.25 million in compensatory damages and approximately $20.7 million in punitive damages.  Philip Morris argues that the punitive damages award is excessive in violation of constitutional due process.  After careful review, we conclude that the punitive damages award is not unconstitutionally excessive and does not violate due process.  We therefore affirm the District Court's ruling.

An enormous amount of time and resources have been spent by the parties and the courts on this single case.  Due to several post-trial motions, it's been over six years since Mrs. Berger's case went to trial, and her case has already come to us once on appeal.  See Cote v. R.J. Reynolds Tobacco Co., 909 F.3d 1094 (11th Cir. 2018) ("Cote I").  Sadly Mrs. Berger died before her legal case was resolved, and Bernard Cote, as the personal representative of her estate, carries on here to seek belated justice on her behalf.[1]  See id. at 1099 n.1.  With our resolution of this latest post-trial motion, we hope this winding litigation will come to a close.[2]

---

[1] As this Court did in Cote I, and for the sake of clarity, we refer to Mrs. Berger as the plaintiff-appellee.  See Cote I, 909 F.3d at 1099 n.1.

[2] In denying Philip Morris's motion, the District Court said it would have ordinarily issued an order to Philip Morris to show cause why it should not pay attorney's fees and costs that it caused Mrs. Berger to incur by engaging in "vexatious litigation" that "served no other purpose than to delay payment of the judgment."  However, the District Court acknowledged that such an order "would no doubt bring about further skirmishing" and "serve [Philip Morris's] strategy of delay."  The District Court therefore declined to issue a show cause order but urged this Court to issue remedial sanctions as it deems proper if Philip Morris were unsuccessful in its appeal.  We decline to sua sponte issue remedial sanctions at this time, but we agree with the District Court's admonition that further delay is not acceptable.

## I. BACKGROUND

In 1994, Florida smokers and their survivors brought a class action lawsuit in Florida state court against the major cigarette companies, including Philip Morris. See Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1174–81 (11th Cir. 2017) (en banc) (detailing the long procedural history of the litigation). The plaintiffs brought a variety of claims based on their smoking-related injuries. Id. at 1174. In Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006), the Florida Supreme Court decertified the class action to allow individual actions to proceed on the issue of damages. See id. at 1267–69. In the wake of Engle, thousands of individual cases were filed. See Graham, 857 F.3d at 1178. This case is one of the last Engle-progeny cases remaining in federal court.

Mrs. Berger was born in 1944 and raised in Brooklyn, New York. Cote I, 909 F.3d at 1101. She tried her first cigarette at the age of thirteen because "all of the kids smoked," including her twin sister. Id. By the age of sixteen, she smoked a pack of cigarettes a day, and by age twenty, a pack and a half a day. Id. at 1101–02. In the 1980s, she "realized that she had become a slave to cigarettes." Id. at 1102. Mrs. Berger tried to quit smoking for years, but it was not until 1998, when she was diagnosed with chronic obstructive pulmonary disease ("COPD"), that she finally stopped smoking. Id. Mrs. Berger brought suit against Philip Morris as an

3

Engle class member under theories of strict liability, negligence, fraudulent concealment, and conspiracy to fraudulently conceal.  Id. at 1100.

Mrs. Berger's case proceeded to trial.  Id.  At trial, testimony and evidence were presented about Mrs. Berger's condition as well as Philip Morris's misconduct.  See id. at 1100–02.  With regard to Mrs. Berger, the evidence established that her addiction to cigarettes caused her COPD.  Id. at 1101.  One of Mrs. Berger's physicians testified that her COPD shortened her life expectancy. As to Philip Morris, the jury heard "extensive evidence" that beginning in the early 1950s and for decades thereafter, Philip Morris "engaged in a massive and effective disinformation campaign, aimed at instilling false doubt about scientific research linking cigarette smoking and deadly disease."  Id.  The evidence at trial also showed that Philip Morris deliberately targeted young people as part of its marketing strategy.  The jury found in favor of Mrs. Berger on all her claims and awarded her $6.25 million in compensatory damages.[3]  Id. at 1102.  The jury also found that Mrs. Berger was entitled to punitive damages for her intentional tort claims.  Id. at 1103.  The trial thus proceeded to a second phase, in which the jury awarded Mrs. Berger $20,760,000.14 in punitive damages.  Id.

---

[3] The jury found that Mrs. Berger was 40 percent comparatively at fault.  However, that finding did not affect her compensatory recovery because the jury also found Philip Morris liable on Mrs. Berger's intentional tort claims.  Under Florida law, there is no reduction to compensatory damages that result from an intentional tort.  See Fla. Stat. § 768.81(4).

4

After the jury returned the verdict in favor of Mrs. Berger, Philip Morris moved for a new trial or a reduction in damages based on, among other things, the excessiveness of the punitive damages award. Philip Morris also moved for judgment as a matter of law on Mrs. Berger's two intentional tort claims—fraudulent concealment and conspiracy to fraudulently conceal. The District Court granted judgment as a matter of law in favor of Philip Morris on the two intentional tort claims and vacated the punitive damages award that was based on those claims.

On appeal, our Court reversed the District Court's order granting Philip Morris's motion for judgment as a matter of law on the two intentional tort claims. Cote I, 909 F.3d at 1106–09. We remanded "the case to the district court for the entry of judgment in Plaintiff's favor on claims for fraudulent concealment and conspiracy to fraudulently conceal and for reinstatement of the jury's corresponding punitive damages award." Id. at 1110. On remand, the District Court entered an amended judgment in the amount of $6.25 million in compensatory damages and approximately $20.7 million in punitive damages. In response, Philip Morris filed three motions, one of which argued that the punitive damages award should either be vacated or reduced because it is unconstitutionally excessive in violation of due process. The District Court considered the three guideposts established by the Supreme Court for analyzing whether a punitive

5

damages award is unconstitutionally excessive. This resulted in its finding that the punitive damages award to Mrs. Berger is not unconstitutionally excessive. The District Court therefore denied Philip Morris's motion, and Philip Morris brought this appeal.

## II. DISCUSSION

This case presents the question of whether the $20.7 million in punitive damages awarded to Mrs. Berger is unconstitutionally excessive. Before we get to that, however, the parties raise a preliminary question about whether our decision in Cote I bars Philip Morris from arguing that the punitive damages award is unconstitutionally excessive. We begin by disposing of that preliminary matter and then turn to the substance of this appeal.

A.    **Philip Morris's argument that the punitive damages award is unconstitutionally excessive is not barred by our decision in Cote I.**

In Cote I, this Court reversed the District Court's order granting Philip Morris's motion for judgment as a matter of law on Mrs. Berger's two intentional tort claims. See Cote I, 909 F.3d at 1106–09. We remanded the case to the District Court for entry of judgment in favor of Mrs. Berger on those claims. See id. at 1110. And because the District Court vacated the punitive damages award when it granted judgment as a matter of law on those claims, we also remanded the case to the District Court "for reinstatement of the jury's corresponding punitive damages award." Id.

6

In the "Introduction" section of her brief on appeal, Mrs. Berger asserts, without any supporting authority, that this Court's direction to the District Court in Cote I to reinstate the punitive damages award is "dispositive law of the case" that required reinstatement of the award and "no more." In other words, Mrs. Berger appears to argue that Cote I bars any further proceedings on punitive damages. But Mrs. Berger does not press her assertion anywhere in the body of her brief. Philip Morris argues in turn that Mrs. Berger has abandoned this issue by not arguing it outside of the Introduction of her brief.

An issue is abandoned when passing references to it are made only in, for example, a brief's statement of the case or summary of the argument. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014); see also Cole v. U.S. Att'y Gen., 712 F.3d 517, 530 (11th Cir. 2013) (a party abandons an issue when he "mentions [it] only in his Statement of the Case but does not elaborate further in the Argument section"), abrogated on other grounds by Nasrallah v. Barr, 590 U.S. ___, 140 S. Ct. 1683 (2020). Here, because she raises it only in the Introduction of her brief, Mrs. Berger abandoned her assertion that the decision in Cote I bars Philip Morris from arguing that the punitive damages award is unconstitutionally excessive.

Nonetheless, even if this assertion was not abandoned, it fails on the merits. The "mandate rule" is a specific application of the law of the case doctrine.

Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1331 (11th Cir. 2005).  The mandate rule prohibits a district court from altering, amending, or examining our mandate or giving any further relief or review.  See Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir. 1985).  However, it does "not extend to issues the appellate court did not address," and thus the district court is "free to address, as a matter of first impression, those issues not disposed of on appeal."  Id. at 1119–20.  Nothing in our decision in Cote I addressed whether the punitive damages award is unconstitutionally excessive.  We simply remanded the case to the District Court "for reinstatement of the jury's corresponding punitive damages award."  See Cote I, 909 F.3d at 1110.  Indeed, the panel in Cote I couldn't have addressed that issue because the District Court took the punitive damages award out of the case before it came to us on appeal.  Therefore, the District Court was free to address the constitutionality of the punitive damages award on remand, and our decision in Cote I does not bar Philip Morris from raising the issue here.

**B.    The punitive damages award in this case is not unconstitutionally excessive.**

With that issue out of the way, we turn to the heart of this appeal.  Philip Morris argues that the $20.7 million in punitive damages awarded to Mrs. Berger is excessive and violates due process.  We review de novo the constitutionality of a punitive damages award and defer to the district court's findings of fact unless

8

clearly erroneous.  McGinnis v. Am. Home Mortg. Servicing, Inc., 901 F.3d 1282, 1288 (11th Cir. 2018).  It is well-established that punitive damages can be imposed in order to further the government's legitimate interest in punishing and deterring unlawful conduct.  BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595 (1996).  However, because a punitive damages award is an exercise of government power, it must comport with constitutional due process.  Action Marine, Inc. v. Continental Carbon Inc., 481 F.3d 1302, 1318 (11th Cir. 2007).  A "grossly excessive" punitive damages award is one that "furthers no legitimate purpose and constitutes an arbitrary deprivation of property," thereby violating due process.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).[4]

When deciding whether a punitive damages award is unconstitutionally excessive, we consider three "guideposts."  See Action Marine, 481 F.3d at 1318.  First, we consider the degree of reprehensibility of the defendant's misconduct.  Id.  Second, we look at the ratio of the punitive damages award to the actual or potential harm suffered by the plaintiff.  Id.  Third, we look at the difference

---

[4] Our due process analysis is the same regardless of whether the Fifth Amendment or the Fourteenth Amendment applies.  See Williams v. First Advantage LNS Screening Sols. Inc., 947 F.3d 735, 749–50 & n.12 (11th Cir. 2020) (Fifth Amendment); Action Marine, 481 F.3d at 1318 (Fourteenth Amendment); see also Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993) ("It should make no difference whether the imposition of [punitive] damages was by a federal or state court or whether on federal or state claims.  For this purpose there is only one Due Process Clause.").

between the punitive damages award and the civil penalties authorized or imposed in comparable cases. Id. We will take up these three guideposts in order. Because all three guideposts indicate that the punitive damages award in favor of Mrs. Berger is not unconstitutionally excessive, we hold that the award does not violate due process.[5]

1.    Reprehensibility

The first guidepost considers the reprehensibility of the defendant's conduct, which is the "most important indicium of the reasonableness of a punitive damages award." State Farm, 538 U.S. at 419, 123 S. Ct. at 1521 (quotation marks omitted); see also McGinnis, 901 F.3d at 1288 ("The reprehensibility of the defendant's conduct is the 'dominant consideration' in assessing whether a jury's punitive damages award is excessive."). There are five specific factors we

---

[5] Perhaps recognizing it wouldn't fare too well on the guideposts, Philip Morris advances two arguments unrelated to the guideposts for why the punitive damages award to Mrs. Berger is unconstitutionally excessive. First, Philip Morris says the punitive damages are not necessary for deterrence or punishment. Second, Philip Morris says that any punitive damages award must be low enough such that the aggregate amount of punitive damages in all Engle litigation is not unconstitutionally excessive. During the pendency of this appeal, we decided Kerrivan v. R.J. Reynolds Tobacco Co., 953 F.3d 1196 (11th Cir. 2020), another Engle-progeny case involving the constitutionality of a punitive damages award against Philip Morris. See id. at 1200–01. In that case, Philip Morris made these same two arguments. See id. at 1208 n.8. This Court rejected both arguments as "irrelevant to the constitutional test for excessiveness" and said neither argument could "justify reversal of the punitive damages award on constitutional grounds." Id. Philip Morris concedes that Kerrivan forecloses its arguments and only presses them in our Court to "preserve its position for potential further review." In light of Philip Morris's acknowledgment, we do not consider these two arguments. But if we were to consider them, they are foreclosed by Kerrivan, which characterized them as "irrelevant to the constitutional test for excessiveness." Id.

10

consider under the reprehensibility guidepost: (1) whether "the harm caused was physical as opposed to economic"; (2) whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) whether "the target of the conduct had financial vulnerability"; (4) whether "the conduct involved repeated actions or was an isolated incident"; and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." Myers v. Cent. Fla. Inv., Inc., 592 F.3d 1201, 1219 (11th Cir. 2010). There is no requirement that a certain number of the factors be present, but "reprehensibility grows more likely as more factors are present." Id.

Philip Morris does not appear to contest that its conduct was reprehensible. Nonetheless, we briefly address the various factors that make up the reprehensibility guidepost.[6] The first factor indicates Philip Morris engaged in reprehensible conduct, as Mrs. Berger suffered from severe COPD caused by her addiction to cigarettes, which is physical harm. Cote I, 909 F.3d at 1101. The second factor also demonstrates reprehensible conduct because Philip Morris was indifferent to the health and safety of others. Specifically, Philip Morris knew its

---

[6] The reprehensibility determination begins with "the identification of the [government's] interest and an assessment of the strength of that interest" in imposing punitive damages. Action Marine, 481 F.3d at 1319 (quotation marks omitted). The parties do not expressly address this issue, so we assume they agree with the District Court's finding that the government has a "significant" interest in punishing and deterring Philip Morris's unlawful conduct that occurred in this case.

products were addictive and dangerous and yet worked to suppress this information by engaging in a "massive and effective disinformation campaign, aimed at instilling false doubt about scientific research linking cigarette smoking and deadly disease." Id. at 1099–1101. Beyond that, Philip Morris deliberately targeted young people as part of its marketing strategy. Mrs. Berger does not argue that the third factor, concerning the financial vulnerability of the victim, shows reprehensible conduct, so we do not address it.[7] The fourth factor indicates reprehensible conduct because Philip Morris's conduct involved repeated actions and not an isolated incident. The evidence at trial showed that Philip Morris's disinformation campaign began in the early 1950s and continued for decades. Id. at 1101. The final factor, concerning whether the harm was the result of intentional malice, trickery, or deceit, also demonstrates reprehensibility. The whole point of Philip Morris's disinformation campaign was to hide the scientific research it knew linked cigarette smoking to deadly disease. Id. at 1100–01. Because all but one of the factors indicate that Philip Morris's conduct was reprehensible (and because Philip Morris does not contest the reprehensibility guidepost), this guidepost indicates that the punitive damages award is not unconstitutionally excessive.

---

[7] The District Court found that the third factor did not weigh in favor of either side but noted that "Philip Morris had and still has vastly more financial resources than Mrs. Berger did."

2.    Ratio

The next guidepost considers "the ratio of punitive damages to actual harm inflicted on the plaintiff." Myers, 592 F.3d at 1221. In practice, this means we examine the ratio of punitive damages to compensatory damages. Id. There is no certain ratio at which a constitutionally permissible award is transformed into an unconstitutionally excessive one. See Action Marine, 481 F.3d at 1321 (the appropriate ratio has not been "reduced to a 'simple mathematical formula'"); see also State Farm, 538 U.S. at 425, 123 S. Ct. at 1524 (declining to "impose a bright-line ratio which a punitive damages award cannot exceed"). Rather, the "precise award in any case . . . must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." State Farm, 538 U.S. at 425, 123 S. Ct. at 1524. However, we are not left fumbling entirely in the dark as to what ratio is constitutionally appropriate. The Supreme Court has observed that hundreds of years of legislative history have provided for "sanctions of double, treble, or quadruple damages to deter and punish." Id. Although "not binding," this shows us that single-digit multipliers are "more likely to comport with due process," but that a punitive damages award of "more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id. Here, Mrs. Berger was awarded just over $20.7 million in punitive damages together with $6.25 million in compensatory damages. That is approximately a

13

3.3-to-1 ratio, which is a single-digit multiplier, and a punitive damages award less than four times the amount of compensatory damages. Therefore, the ratio guidepost indicates that the punitive damages award to Mrs. Berger is not unconstitutionally excessive.

Philip Morris makes two arguments to the contrary. First, Philip Morris seizes on language in State Farm, which says that when "compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." State Farm, 538 U.S. at 425, 123 S. Ct. at 1524. In its view, the $6.25 million compensatory damages award is substantial, such that punitive damages should be capped at that amount. We are not persuaded. As an initial matter, this Court has characterized the language Philip Morris relies on as dicta. See McGinnis, 901 F.3d at 1290. But even if it weren't dicta, the very next sentence of State Farm says the precise award in each case "must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." State Farm, 538 U.S. at 425, 123 S. Ct. at 1524. In light of the reprehensible facts and circumstances of this case, see supra Part II.B.1, we believe the ratio here is proper. Beyond that, requiring a 1-to-1 ratio whenever a defendant asserts that the compensatory damages are

14

"substantial" would impose a "bright-line ratio" that the Supreme Court has expressly declined to adopt.  See State Farm, 538 U.S. at 425, 123 S. Ct. at 1524.[8]

Second, Philip Morris notes that two other Engle-progeny cases had punitive damages with ratios of close to 3-to-1 that were found to be unconstitutionally excessive.  It says this means that the ratio here is also unconstitutionally excessive.  This argument fails to persuade us as well.  We are aware of no reason why two decisions in other Engle-progeny cases (there are thousands) as to the excessiveness of punitive damages in those cases should govern here.  We are mindful that the award in each case must be based on the "facts and circumstances of the defendant's conduct and the harm to the plaintiff."  State Farm, 538 U.S. at 425, 123 S. Ct. at 1524.  Among other differences, those two cases only included R.J. Reynolds Tobacco Co. as a defendant, not Philip Morris, and of course involved different plaintiffs.  See R.J. Reynolds Tobacco Co. v. Schoeff, 178 So. 3d 487, 488 (Fla. 4th DCA 2015), quashed, 232 So. 3d 294 (Fla. 2017); R.J. Reynolds Tobacco Co. v. Townsend, 90 So. 3d 307, 309 (Fla. 1st DCA 2012).

---

[8] Philip Morris also cites Exxon Shipping Co. v. Baker, 554 U.S. 471, 514–15, 128 S. Ct. 2605, 2634 (2008), for its view that the punitive damages award must be capped at a 1-to-1 ratio. However, the Supreme Court in Exxon Shipping was "quite explicit that it was dealing with maritime law, and not due process of law."  Myers, 592 F.3d at 1222; see Exxon Shipping, 554 U.S. at 501–02, 128 S. Ct. at 2626–27.

Thus, the defendant's conduct and the harm to the plaintiffs in those cases do not dictate any outcome here.[9]

### 3.    Civil Penalties

The final guidepost considers the "difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Action Marine, 481 F.3d at 1318 (quotation marks omitted).  This guidepost is "accorded less weight . . . than the first two guideposts." Id. at 1322 (quotation marks omitted).  The Florida Supreme Court has recognized that in "comparable cases, the civil penalty is often three times the compensatory award." Schoeff v. R.J. Reynolds Tobacco Co., 232 So. 3d 294, 308 (Fla. 2017).  Because the ratio of 3.3-to-1 here is remarkably close to that treble multiplier in comparable cases under Florida law, the civil penalties guidepost also supports the punitive damages award imposed in this case.

### III.  CONCLUSION

All three guideposts used for determining whether a punitive damages award is unconstitutionally excessive indicate that the award in this case is not

---

[9] Philip Morris notes that in Kerrivan this Court recently affirmed an award that had at most a 2-to-1 ratio.  See Kerrivan, 953 F.3d at 1210.  And because this case involves a 3.3-to-1 ratio, Philip Morris says the punitive damages award here "need[s] to be reduced" to a 2-to-1 ratio.  Again, Philip Morris fails to explain why our affirmance of a ratio in another Engle-progeny case sets the ceiling for the punitive damages award in this case.

excessive.  The punitive damages award made to Mrs. Berger does not violate due process.

**AFFIRMED.**