[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10765

_____

TOP TOBACCO, L.P.,
REPUBLIC TECHNOLOGIES (NA), LLC,
REPUBLIC TOBACCO, L.P.,

Plaintiffs-Appellees,

*versus*

STAR IMPORTERS & WHOLESALERS, INC.,
AMIN S. HUDDA,

Defendants-Appellants,

KARIM HUDDA, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-04939-MLB

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and KIDD, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a district court erred in refusing to reduce a jury verdict that fell within the range of statutory damages permitted by the Lanham Act. *See* 15 U.S.C. § 1117(c). Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P., sued Star Importers & Wholesalers, Inc., and Amin Hudda, Star's president, for selling counterfeit TOP® and JOB® cigarette rolling papers. The district court granted summary judgment against Star on liability for trademark infringement and counterfeiting. *See id.* §§ 1114, 1125(a); GA. CODE ANN. §§ 10-1-372, 23-2-55. It then held a trial to decide statutory damages. The jury found that Star did not act willfully, and it awarded Republic $123,000 in damages per mark—below the maximum of $200,000 per mark permitted by section 1117(c)(1) for nonwillful infringement. The district court denied Star's motion for judgment as a matter of law challenging the size of the verdict. Because the verdict fell within the range of statutory damages

permitted by Congress and Star did not object to the jury instructions about awarding those damages, we affirm.

## I. BACKGROUND

Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P., sued Star Importers & Wholesalers, Inc., and Amin Hudda, Star's president, for selling counterfeit cigarette rolling papers. The rolling papers were TOP® and JOB® branded items for which Republic owned trademarks. Republic received a tip that Star—a merchandise wholesaler that sold Republic products to downstream businesses like gas stations and supermarkets—was distributing counterfeit rolling papers. So it conducted test buys to investigate. Laboratory testing revealed that some of the products purchased in the test buys were counterfeit. Republic representatives then assisted with a search of Star's warehouse, where the police executed a search warrant and seized 704 jars of allegedly counterfeit rolling papers.

Republic's first amended complaint alleged eight statutory and common-law claims against Star for trademark counterfeiting, 15 U.S.C. § 1114(1)(a); trademark infringement, *id.* § 1114; unfair competition, *id.* § 1125(a); GA. CODE ANN. § 23-2-55; deceptive trade practices, GA. CODE ANN. § 10-1-372; and unjust enrichment. Republic moved for summary judgment. The district court granted summary judgment against Star but not against Hudda. The issues that remained for trial were Hudda's personal liability, whether Star's infringement and counterfeiting were willful, and the amount of statutory damages to be awarded, 15 U.S.C. § 1117(c).

At a jury trial, Republic presented evidence about the value of its TOP® and JOB® brands and the threat of reputational damage posed by counterfeiting. Sachin Lele, Republic's executive vice president, testified that the TOP® and JOB® brands had "acquired a reputation for quality . . . [and] for consistency" in more than a century of distribution. He explained that the TOP® and JOB® products were Republic's "crown jewels" and that the company spent about $4 to $5 million advertising them annually. Hudda, Star's own witness, also acknowledged the value of the TOP® and JOB® brands and agreed that these products were in "high demand."

Republic also introduced evidence that the counterfeit rolling papers did not conform with regulatory standards. Lele testified that Republic must submit rolling papers and "ingredient filings" to the Food and Drug Administration "for authorization." He read from an expert report that explained that "[t]he products confirmed to be counterfeit are of lesser quality than, and in many instances contain, unauthorized constituents that are not present in plaintiffs' genuine TOP® and JOB® brand cigarette rolling papers." And he explained that Republic could not identify an unknown ingredient found in the counterfeit rolling papers and that "[i]t could be harmless, it could be harmful[,] [w]e just don't know."

Witnesses for both sides testified about the prevalence of counterfeiting in the industry. Lele stated that "[c]ounterfeiting is a relatively big issue for [Republic]." Victor Hartman, an investigator retained by the law firm representing Republic, testified that

counterfeiting was "pervasive" in the wholesale industry. And Hudda conceded that he was "aware of counterfeit products in [his] area."

The district court instructed the jury that it could consider eight nonexclusive factors about finances and culpability when deciding the damages award:

> To determine an appropriate amount of damages, you may consider a number of factors, including but not limited to, the expenses saved and the profits reaped, the revenues lost by the plaintiff, the value of the trademark, the deterrent effect on others besides the defendant, whether the defendants' conduct was innocent or willful, whether [the] defendant has cooperated in providing particular records from which to assess the value of the infringing material, the potential for discouraging the defendant at issue and whether the counterfeit goods posed a risk to public safety.

It elaborated, "Because statutory damages are intended to provide both compensatory and punitive relief, there is no necessary mathematical relationship between the size of such a statutory damages award and the extent or profitability of the defendants' wrongful conduct." But it cautioned, "An award of statutory damages, however, should not constitute a windfall for the plaintiff and thus should bear some relationship to the actual damages suffered by the plaintiff and in consideration of the other factors." Star did not

object to these jury instructions. Nor does it challenge them on appeal.

The jury rendered a verdict for Republic. Although it found that Star's conduct was not willful, it awarded Republic $123,000 in damages per mark for a total of $1,107,000 for the nine marks infringed. And it found Hudda personally liable for Star's trademark infringement and counterfeiting.

Star moved for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b), or, in the alternative, to order remittitur or a new trial, under Rule 59(e). It argued that the verdict was excessive as a matter of law and inconsistent with the jury's finding that it had not acted willfully. The district court denied the motion.

Star appealed the denial of its Rule 50(b) motion. But it did not raise as an issue the denial of its alternative motion for remittitur or a new trial under Rule 59(e). So it forfeited any argument about the denial of those alternative remedies. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief . . . are deemed waived.").

## II. STANDARD OF REVIEW

We review the denial of a motion for judgment as a matter of law *de novo*. *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 723 (11th Cir. 2012). In doing so, we "draw[] all reasonable inferences in favor of the nonmoving party." *Id.* at 724.

24-10765                Opinion of the Court                7

### III. DISCUSSION

Under the Lanham Act, plaintiffs who sue for trademark infringement "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1117(c). The general range for statutory damages is $1,000 to $200,000 per counterfeit mark. *Id.* § 1117(c)(1). But the cap rises to $2,000,000 per counterfeit mark "if the court finds that the use of the counterfeit mark was willful." *Id.* § 1117(c)(2). In this appeal, the jury determined that Star had not acted willfully, and it awarded statutory damages of $123,000 per mark—within the range outlined in section 1117(c)(1).

We divide our discussion into three parts. First, we explain that the verdict was not illegal for being larger than the actual damages that Republic suffered. Second, we explain that the verdict was not illegal for potentially being based in part on deterrence even though Star's conduct was not willful. Third, we explain that the verdict did not violate the Due Process Clause.

*A. The Verdict Was Not Illegal for Being Larger*
*than Republic's Actual Damages.*

Star argues that the verdict was illegal because it bore no relationship to the actual damages that Republic suffered. Republic responds that the verdict was legal because it fell within the range for statutory damages permitted by section 1117(c)(1). Republic has the better argument.

As a threshold matter, the district court lacked the authority to reduce the verdict in the manner Star requested. Star argues that the district court should have unilaterally "put the award in context with the evidence of actual damages." But that kind of alteration outside the remittitur context—an option that Star forfeited on appeal—would usurp the jury's well-established role as factfinder.

"A federal court has no general authority to reduce the amount of a jury's verdict" because "[t]he Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). The Supreme Court has held in the analogous copyright context that the "Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages . . . , including the amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998). We have little difficulty extending this principle to trademark cases because of the "clear and direct historical evidence that juries, both *as a general matter* and in copyright cases, set the amount of damages awarded to a successful plaintiff." *Id.* (emphasis added).

Star's argument that the verdict needed to be related to actual damages is also wrong as a legal matter. The lodestar for the legality of an award for statutory damages is the range enshrined by Congress—not the amount of actual damages. In the copyright context, for example, a district "court has wide discretion in determining the amount of statutory damages to be awarded,

*constrained only by the specified maxima and minima.*" *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (emphasis added) (citation and internal quotation marks omitted). And the Supreme Court has explained that a statutory damages award "must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum" but "[w]ithin these limitations the court's discretion and sense of justice are controlling." *F. W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232 (1952) (citation and internal quotation marks omitted). The jury had wide latitude to award a within-range verdict regardless of the size of actual damages.

Nothing in section 1117(c) nor precedent suggests that statutory damages must be related to actual damages; instead, all signs point toward the opposite conclusion. Section 1117(c) states that plaintiffs may pursue statutory damages "*instead of* actual damages and profits." 15 U.S.C. § 1117(c) (emphasis added). In a related context, the Copyright Act authorizes statutory damages regardless of "whether or not adequate evidence exists as to the actual damages incurred by plaintiffs." *Cable/Home Commc'n*, 902 F.2d at 850. That Act uses the same language as section 1117(c): plaintiffs "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). We extend this evident principle to the trademark context. As our sister circuit has explained, "[i]t makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where

actual harm is difficult or impossible to calculate." *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 907–08 (8th Cir. 2012).

The jury instructions and evidence at trial also foreclose Star's argument. The district court instructed the jury that "[a]n award of statutory damages . . . should not constitute a windfall for the plaintiff and thus should bear some relationship to the actual damages suffered by the plaintiff and in consideration of the other factors." Because we "presume that a jury follows its instructions," *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1218 (11th Cir. 2021), we can assume that the jury ensured that the verdict "b[ore] some relationship to the actual damages"—even if it did not need to do so as a matter of first principles.

The district court also instructed the jury that it could "consider a number of factors, including . . . the value of the trademark, the deterrent effect on others besides the defendant, . . . the potential for discouraging the defendant at issue and whether the counterfeit goods posed a risk to public safety." Based on those factors, the evidence at trial supported a verdict greater than the actual damages. Because Sachin Lele, Republic's executive vice president, testified that the TOP® and JOB® brands had built a strong reputation in over a century of their distribution, the jury could have found that a larger award was needed in the light of "the value of the trademark[s]." The jury also could have found that the award was necessary as a "deterrent" based on the testimony from several witnesses, including Amin Hudda, Star's president, about the prevalence of counterfeiting in the wholesale industry. And Republic's

evidence about the unknown ingredient identified in the counterfeit rolling papers could have led the jury to render a larger award due to the "risk to public safety." The district court did not err in refusing to alter the damages in the light of this evidence.

B. *The Verdict Was Not Illegal for Possibly Being Based on Deterrence Even Though the Jury Found that Star Did Not Act Willfully.*

Star next contends that the verdict was illegal because it imposed damages for punishment and deterrence even though the jury found no willfulness. Republic responds that the verdict was legal because the jury stayed within the range of statutory damages permitted for nonwillful infringement under section 1117(c)(1). Republic has the better argument again.

Nothing in the record suggests that the jury "punished" Star with damages that could be awarded only for willful infringement. To the contrary, the jury rendered a verdict below the statutory maximum for nonwillful infringement. *See* 15 U.S.C. § 1117(c)(1). In the light of the posture of this appeal, where we "draw[] all reasonable inferences in favor of the nonmoving party," *Hubbard*, 688 F.3d at 724, we refuse to speculate that the jury relied on improper considerations when reaching its verdict.

Star's argument is also foreclosed by the jury instructions. The district court instructed the jury that "[a] finding of willfulness . . . is not required in order to award statutory damages." Those instructions further explained that "[b]ecause statutory damages serve . . . both compensatory and punitive purposes, under the law, Republic can recover statutory damages even if Republic did not

lose revenue or suffer any actual damages." Because Star neither objected to the jury instructions at trial nor contests them on appeal, it is foreclosed from arguing that willfulness is a prerequisite to awarding statutory damages. *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) ("Where a party expressly accepts a jury instruction, such action constitutes invited error and serves to waive his right to challenge the accepted instruction on appeal." (alterations adopted) (citation and internal quotation marks omitted)).

The jury instructions also correctly stated the law. Star overreads the prefatory phrase in our statement in *Cable/Home Communication Corp. v. Network Productions, Inc.* that *"when the infringement is willful,* deterrence of future violations is a legitimate consideration because defendants must not be able to sneer in the face of copyright owners and copyright laws." 902 F.2d at 851 (emphasis added) (citation and internal quotation marks omitted). Although Star cites this language to argue that a finding of willfulness is a condition precedent to the jury considering additional justifications for punishment like deterrence, a closer examination of that decision makes clear that it does not support that argument. In *Cable/Home Communication*, we explained that district courts have "wide latitude . . . in awarding statutory damages, bounded only by the statutory limits." *Id.* at 852. And we ruled that "the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed"—with no suggestion that the former was a condition precedent to consideration of the latter. *Id.* That we stated that a jury can consider deterrence when

the infringement is willful does not mean that a jury cannot also consider deterrence when the infringement is not willful.

### C. The Verdict Did Not Violate Star's Right to Due Process.

Star also argues that the verdict violated the Due Process Clause. Republic responds that the upper limit for damages enshrined in section 1117(c) mitigates the risk that damages will be so excessive as to violate the Constitution. Although Star cites the Fourteenth Amendment and relies on precedent interpreting that Amendment, its challenge to a verdict rendered by a federal court for statutory damages under a federal statute could implicate only the Fifth Amendment. *See* U.S. CONST. amend V. Because in other contexts we have held that "[o]ur due process analysis is the same regardless of whether the Fifth Amendment or the Fourteenth Amendment applies," *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 n.4 (11th Cir. 2021), we assume that caselaw interpretating the Fourteenth Amendment governs this appeal too. But, even under Fourteenth Amendment caselaw, Republic has the better argument.

The within-range verdict against Star is not so disproportionate as to offend the Constitution. In *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, the Supreme Court held that a statutory damages award violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." 251 U.S. 63, 66–67 (1919). As one scholar has explained, "*Williams* seemingly approved a very high ratio between the legislatively created remedy

and potential plaintiff harm" because it "upheld the statutory maximum of $300, which would apply even if the overcharge was unintentional and only in the amount of one cent." *See* Colleen P. Murphy, *Reviewing Congressionally Created Remedies for Excessiveness*, 73 OHIO ST. L.J. 651, 692 (2012). In the light of Star's concession that "[t]he maximum amount of actual damages possibly supported by the evidence, assuming the jury made every inference in favor of Republic, was $200,000," the verdict in this appeal was well below that ratio. And that the verdict fell closer to the middle than the top of the range for statutory damages further confirms that it did not violate the Due Process Clause.

The verdict is also consistent with *Williams*'s endorsement of awards for statutory damages based on other factors besides actual damages. The Court explained that due process does not require that a statutory penalty "be confined or proportioned to . . . loss or damages; for, as it is imposed as a punishment for the violation of a public law, the legislature may adjust its amount to the public wrong rather than the private injury." *Williams*, 251 U.S. at 66. Because the Court has long recognized that the enforcement of trademarks vindicates "the public interest," *Mfg. Co. v. Trainer*, 101 U.S. 51, 62 (1880), Congress could establish the statutory damages regime in section 1117(c) that permitted Star's penalty. "When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established [law]," Star's penalty "cannot be said to be so severe and oppressive as to be wholly

disproportioned to the offense or obviously unreasonable." *Williams*, 251 U.S. at 67.

## IV. CONCLUSION

We **AFFIRM** the denial of Star's motion for judgment as a matter of law.