**ACRYLICON USA, LLC, a Delaware limited liability company, Plaintiff-Appellee,**

v.

**SILIKAL GMBH & CO., a foreign corporation, et al., Defendants,**

**Silikal GmbH, a foreign company, Defendant-Appellant.**

No. 16-11368

United States Court of Appeals, Eleventh Circuit.

(May 31, 2017)

Jeffrey B. Crockett, Kevin C. Kaplan, Gabriel Groisman, Coffey Burlington, PL, Miami, FL, Christina Michelle Baugh, Henry D. Fellows, Jr., Fellows LaBriola, LLP, Atlanta, GA, Benjamin Henry Brodsky, Brodsky Fotiu-Wojtowicz, PLLC, Miami, FL, for Plaintiff-Appellee

Kristina M. Jones, John Da Grosa Smith, Smith, LLC, Atlanta, GA, Felix Faerber, Bridgehouse Law, LLP, Atlanta, GA, F. Ronald Jenkins, Jr., Meridian 361 International Law Group PLLC, Portland, ME, John F. Kane, Kane CO Law, Decatur, GA, for Defendant-Appellant

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Silikal GmbH ("Silikal") brings an interlocutory appeal, pursuant to 28 U.S.C. § 1292(a)(1), challenging the grant of a permanent injunction in favor of Plaintiff-Appellee, AcryliCon USA, LLC ("AcryliCon"). Silikal also requests review, as an exercise of this Court's pendent appellate jurisdiction, of the district court's refusal to dismiss the underlying action for lack of personal jurisdiction. Because the decision to enter a permanent injunction was correct, and because we do not have pendent jurisdiction over the question of personal jurisdiction in the circumstances presented by this appeal, we affirm in part, dismiss in part, and remand to the district court for further proceedings.

## I. Background

AcryliCon is a Georgia-based company that markets and sells an industrial flooring system. Silikal is a German corporation, which, until recently, manufactured a flooring resin known as 1061 SW exclusively for AcryliCon. This resin—the formula for which is AcryliCon's trade secret—is

substantially harder than other resins and, accordingly, creates a highly durable floor. Other than AcryliCon, only Silikal had access to the formula for 1061 SW and, even then, only for the limited purpose of manufacturing it for AcryliCon.

AcryliCon and Silikal have had at least two prior disputes concerning the latter's alleged misuse of 1061 SW. One of these actions, filed in the Southern District of Florida, was voluntarily dismissed upon stipulation of the parties. The other, filed in the Northern District of Georgia, was likewise dismissed after the parties entered into a global settlement agreement (the "Agreement"). In the Agreement, Silikal represented that it had not, either directly or indirectly, sold or distributed 1061 SW resin to anyone other than AcryliCon. Moving forward, Silikal also agreed that it would not sell or distribute 1061 SW to anyone other than AcryliCon, unless otherwise expressly permitted in writing. Pursuant to the terms of the Agreement, both parties waived all future objections to personal jurisdiction or venue in the Northern District of Georgia "as to all disputes regarding activities in the United States."

AcryliCon now claims that Silikal has breached the Agreement and has continued to repackage 1061 SW as Silikal resin and to sell it with the Silikal trademark, including to customers in the United States. AcryliCon brought this action for misappropriation of trade secrets, trademark infringement under the Lanham Act, federal unfair competition, trademark infringement and unfair competition under Georgia law, violation of the Georgia Uniform Deceptive or Unfair Trade Practices Act, and breach of contract. Silikal moved to dismiss the second amended complaint for lack of personal jurisdiction. The district court denied that motion. On subsequent cross-motions for summary judg-

ment, the district court granted partial summary judgment on the breach of contract claim to AcryliCon and entered a permanent injunction barring Silikal from using, selling, or distributing the 1061 SW resin. This appeal followed.

## II. Discussion

On appeal, Silikal raises two objections to its treatment in the district court. First, it argues that the court erred in denying the motion to dismiss for lack of personal jurisdiction. Second, assuming that the exercise of personal jurisdiction was proper, Silikal argues that the court nonetheless erred by entering a permanent injunction. We address each argument in turn.

### A. Personal Jurisdiction

 Silikal first argues that the district court was incorrect to assert the existence of personal jurisdiction. Because a district court's determination regarding personal jurisdiction is not a final order, our review at this interlocutory stage would be appropriate only as an exercise of pendent jurisdiction. Both parties urge us to find in favor of such jurisdiction. However, because our discretion over this question is not nearly as wide as the parties suggest, we must decline to do so.

As the Supreme Court has instructed "[p]endent appellate jurisdiction is present when a nonappealable decision is 'inextricably intertwined' with the appealable decision or when 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" King v. Cessna Aircraft Co., 562 F.3d 1374, 1379 (11th Cir. 2009) (second alteration in original) (quoting Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995)). We have consistently agreed with the majority of our sister circuits which read the Supreme Court's decision in Swint restrictively and, accordingly,

limited our pendent appellate review to the two situations described in that case. See, e.g., L.S.T., Inc. v. Crow, 49 F.3d 679, 683 n.8 (11th Cir. 1995); see also Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 757–58 (2d Cir. 1998) (listing this Court as one of the seven "sister circuits [that] have also adopted a restrictive understanding of the exceptions to Swint's general rule"). This limiting principle is not discretionary, as "the Supreme Court has signaled that pendent appellate jurisdiction should be present only under rare circumstances [and that] a more expansive exercise of such jurisdiction would undermine the statutory scheme governing interlocutory appeals." King, 562 F.3d at 1379–80 (citing Swint, 514 U.S. at 45–50, 115 S.Ct. at 1209–11). Accordingly, we have repeatedly stated our conviction that "such jurisdiction [does] not exist when resolution of the nonappealable issue [is] not necessary to resolve the appealable one." Id. at 1380 (collecting cases).

Against this backdrop, the exercise of pendent jurisdiction in the circumstances presented by this appeal is not appropriate. As our discussion below illustrates, the issue of personal jurisdiction is neither inextricably intertwined with nor necessary to ensure meaningful review of the district court's grant of a permanent injunction. The cases to which the briefs urge us to look for our broad discretion do not reflect the consensus view of the circuit courts or, more importantly, the established view of this Court. See Rein, 162 F.3d at 758 (noting that several opinions of the D.C. Circuit—including Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020 (D.C. Cir. 1997), on which the parties rely here—have "given Swint a more permissive reading" than other circuit courts). Accordingly, we are not at liberty to review the question of personal

jurisdiction and express no opinion regarding that issue.

### B. Permanent Injunction

Silikal next argues that the district court improperly entered a permanent injunction because AcryliCon failed to comply with the terms of the Agreement that govern the steps a non-breaching party must take before filing suit. In relevant part, that provision states:

> In the event of a breach of the provisions of this Settlement Agreement, the non-breaching party shall provide written notice of the breach, and the breaching party shall have 10 days to cure its breach. In the event the breach is not or cannot be cured, the parties shall attempt in good faith to commence and complete a mediation within 30 days of such written notice. For breaches in the United States, mediation shall occur in the United States. For breaches outside the United States, mediation shall occur in Germany. Unless the breach is not cured or settled by the parties at mediation, the non-breaching party may commence action to enforce its rights hereunder 30 days after the date of the written notice.

The district court found, notwithstanding AcryliCon's "fail[ure] to meet certain technical requirements of the [Agreement]," that Silikal was "bound by its previous admission that it breached the contract." Accordingly, it granted AcryliCon's motion for summary judgment despite Silikal's objection.

Silikal argued at the district court—and argues again on appeal—that AcryliCon filed its initial complaint in the instant case without providing an opportunity to cure or a period in which to engage in a good-faith mediation.[1] Thus AcryliCon was not

---

1. We note that the language of the Agreement

required the parties to attempt a "mediation"

entitled to file its suit and the district court erred by entering its permanent injunction.

On appeal, AcryliCon acknowledges that its initial complaint was filed before it provided the requisite notice and opportunity to cure. However, because the initial complaint did not assert a claim for breach of the Agreement, AcryliCon argues that it was not required to provide notice at that time. AcryliCon points out that, after it filed the initial complaint, it provided notice of the alleged breach (including a copy of the amended complaint), an opportunity to cure, and a good-faith invitation to mediate in the United States by letter to Silikal's attorney.[2] This notice was sent more than thirty days before the amended complaint—which first asserted a breach of the Agreement—was filed and, accordingly, AcryliCon argues that they have complied with the notice provision.

We agree with AcryliCon and affirm the district court's grant of a permanent injunction.[3] AcryliCon's first complaint did not assert a breach of the Agreement. The terms of the Agreement cannot fairly be read—and Silikal has not argued that they should be read—to govern causes of action that would exist in its absence.[4] Therefore, AcryliCon was under no obligation to serve notice or engage in good-faith mediation at the time their first complaint was filed. After it filed its initial complaint, AcryliCon served notice of the alleged breach on Silikal. This notice, despite expressing skepticism that the breaches were susceptible to cure, gave Silikal the requisite ten days in which to do so and requested that it appear for mediation at one of several available dates within the applicable thirty day period. Silikal rejected both of these entreaties and, having waited more than thirty days from the date on which it provided notice, AcryliCon was thereafter entitled to file suit for breach of the Agreement. That AcryliCon added the breach of contract claim to its existing complaint, rather than filing a separate

before the non-breaching party could file suit. It does not, as AcryliCon's brief on appeal suggests, require merely a "negotiation." AcryliCon's mischaracterization of this provision is particularly curious given that the language is drawn directly from the Agreement that was attached as an exhibit to their amended complaint.

**2.** Silikal responded by claiming that the allegations of the letter and attached complaint were "not of sufficient detail to qualify as notice." The response likewise indicated that Silikal was not amenable to mediation in the United States and suggested mediation in Germany instead.

**3.** However, unlike the district court we are not convinced that Silikal's admitted breach of the Agreement is sufficient to waive the required notice and mediation provisions. Indeed, that is the purpose of such provisions— to allow the breaching party a chance to admit, and rectify, its breach without resorting to the federal courts. Nonetheless, we can affirm the decision of the district court on any

grounds supported by the record. See, e.g., Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 n.9 (11th Cir. 1998).

**4.** Silikal does state in passing that AcryliCon's "non-contract causes of action are clearly based on rights it believes it has under the [Agreement]." Why this must be the case, however, is far from clear. If, as the complaint alleges, Silikal has continued to produce and sell 1061 SW without AcryliCon's consent, the non-contract causes of action could exist in the absence of the Agreement. Certainly, the Agreement contemplates the settlement of all claims—both past and future—which may entitle Silikal to argue that AcryliCon is contractually barred from bringing non-contract causes of action. It is not, however, entitled to argue that the non-contract causes—which arise under federal and state statutory and common law—are based on rights under the Agreement. In any event, passing references are not sufficient to raise an argument on appeal. See, e.g., Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318–19 (11th Cir. 2012).

action, is immaterial. Accordingly, Silikal's challenge to the preliminary injunction is due to be rejected.

### III. Conclusion

Based on the foregoing, the district court's entry of a permanent injunction is affirmed. All other aspects of this appeal are dismissed for want of jurisdiction. The case is remanded to the district court for further proceedings.

**AFFIRMED IN PART, DISMISSED IN PART, AND REMANDED.**