[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12853

_____

ACRYLICON USA, LLC,
a Delaware limited liability company,

Plaintiff-Appellee
Cross-Appellant,

*versus*

SILIKAL GMBH & CO.,
a foreign corporation,
et al,

Defendants,

SILIKAL GMBH,
a foreign company,

                                        Defendant-Appellant
                                        Cross-Appellee.

                        _____

                Appeals from the United States District Court
                      for the Northern District of Georgia
                    D.C. Docket No. 1:14-cv-01072-TWT

                        _____

Before NEWSOM, MARCUS, Circuit Judges, and MIDDLEBROOKS, District Judge.*

MARCUS, Circuit Judge:

AcryliCon USA, LLC ("AC-USA") and Silikal GmbH ("Silikal") have been fighting for years over a trade secret. This is their third trip to our Court. The last time they were before this Court, a panel erased some of the relief awarded to AC-USA after a jury trial. See *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1374–75 (11th Cir. 2021) (*AcryliCon II*). Specifically, we reversed the district court's decision denying Silikal's motion for judgment as a matter of law on AC-USA's misappropriation of

_____

* Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

trade secrets claim and vacated the damages awarded to AC-USA on its breach of contract claim. *Id.* at 1366, 1374. In that opinion, we also concluded that the "permanent" injunction the district court had entered was, in fact, preliminary in nature (not permanent) and that it necessarily dissolved because the district court did not include it in the original final judgment. *Id.* at 1360 n.25.

We remanded the case to the district court to determine the appropriate amount of attorney's fees the prevailing party should receive. *Id.* at 1374. On remand, the district court basically entered the same amount of attorney's fees it had originally awarded. D.E. 575 at 3. The district court also entered a "permanent" injunction barring the use of the trade secret at issue, concluding that it was obliged to do so by our holding in *AcryliCon I.* D.E. 575 at 2; D.E. 589 at 2; *see AcryliCon USA, LLC v. Silikal GmbH & Co.*, 692 F. App'x 613, 617 (11th Cir. 2017) (per curiam) (*AcryliCon I*).

As we see it, the district court misread our holdings, including our unambiguous determination in *AcryliCon II* that no permanent injunction had been entered because the district court's original final judgment did not include one. *See AcryliCon II*, 985 F.3d at 1360 n.25. The district court could not simply "reenter" a permanent injunction against Silikal without first making the appropriate findings pursuant to Rule 65 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65(d). We also conclude that the district court abused its discretion when it awarded AC-USA nearly its full attorney's fees even after we reversed, in *AcryliCon II*, significant portions of the relief AC-USA had been previously awarded.

We vacate and remand for further proceedings consistent with this opinion.

## I.

This dispute began with the breach of a Global Settlement Agreement ("agreement") between two parties that shared a trade secret, AC-USA and Silikal. The trade secret consisted of the formula for 1061 SW, a flooring resin Silikal manufactured and sold. Under the agreement, AC-USA and its affiliate, AcryliCon International, Ltd. ("AC-International"), became Silikal's exclusive distributors of 1061 SW and Silikal could not sell the resin without AcryliCon's written permission. *AcryliCon II*, 985 F.3d at 1357–58.

AC-USA first sued Silikal in the Northern District of Georgia in 2014, alleging that Silikal breached the agreement by "manufacturing the 1061 SW resin, selling it on a global scale, and taking credit for AcryliCon Systems in its marketing." *Id.* at 1359. AC-USA moved for partial summary judgment on its contract claim, and for a permanent injunction barring Silikal from producing or selling 1061 SW. *Id.* at 1360. The district court granted AC-USA's motions and issued a permanent injunction against Silikal, in part because "[p]revious counsel for [Silikal] admitted . . . at a status conference before [the District Court] that there have been sales of [1061 SW] in violation of the global settlement agreement" and that Silikal did not "dispute that there [had] been a breach of contract." *Id.* at 1360–61 (alterations in original) (quotation marks omitted).

Silikal then filed an interlocutory appeal challenging the entry of a permanent injunction. Silikal argued that the district court erred by (1) denying its motion to dismiss for lack of personal jurisdiction and (2) entering a permanent injunction. *AcryliCon I*, 692 F. App'x at 615. We declined to exercise our pendent appellate jurisdiction to consider Silikal's personal jurisdiction argument on interlocutory appeal. *Id.* Although we acknowledged that AC-USA did not follow the agreement's pre-suit notice provisions to perfection, we still upheld the injunction, characterizing it as both "preliminary" and "permanent" in nature at different points in the opinion. *Id.* at 617–18.

While *AcryliCon I* (which addressed primarily the district court's decision to exercise its equitable power and enter an injunction) was pending in this Court, the case went to trial before a jury on AC-USA's legal claims. Of the original seven claims, only two were submitted to the jury: the damages amount on the common law breach of contract claim and a misappropriation of trade secrets claim under the Georgia Trade Secrets Act of 1990.[1] *AcryliCon II*, 985 F.3d at 1362. *See* GA. CODE ANN. §§ 10-1-760–767 (2020). A jury awarded AC-USA damages in the total amount of $1.5 million on each of the two claims, and the district court awarded AC-USA an additional $3 million in punitive damages on

---

[1] Silikal moved for judgment as a matter of law on all of AC-USA's claims and AC-USA responded by withdrawing five of the seven claims. The district court granted Silikal's motion as to those five claims. *AcryliCon II*, 985 F.3d at 1361–62.

the misappropriation claim. *AcryliCon II*, 985 F.3d at 1362. The district court later denied Silikal's post-verdict motion for judgment as a matter of law on the misappropriation and contract claims and entered final judgment for AC-USA in the amount of $5,861,415 -- $4.5 million in damages and $1,361,415 in attorney's fees. *Id.* at 1363, 1368. Notably, the district court's final judgment did *not* include the entry of any injunctive relief. D.E. 449; *AcryliCon II*, 985 F.3d at 1360 n.25.

Silikal appealed the district court's judgment. Among other things, Silikal argued that the district court's $1.5 million damages judgment was only for the misappropriation claim and not for the contract claim. AC-USA disagreed, claiming that the judgment awarded the same total sum of $1.5 million for both the misappropriation and contract claims. *Id.* at 1363. Finding the judgment ambiguous, we issued a limited remand while retaining jurisdiction, instructing the district court to clarify its judgment. *Id.* The district court promptly entered a revised final judgment, which clarified that each claim was an independent ground for the $1.5 million award. D.E. 543.

Silikal appealed the trial court's *revised* final judgment, which resulted in our opinion in *AcryliCon II*. We reached four conclusions relevant to this (the third) appeal. *First*, the Court held that AC-USA failed, as a matter of law, to prove its misappropriation claim and, therefore, reversed the district court's judgment entered in favor of AC-USA on that count. AC-USA could not establish that Silikal misappropriated the trade secrets because, under

Georgia law, the secret must have been acquired under circumstances giving rise to a duty to maintain its secrecy. *Id.* at 1367. At most, the evidence showed that Silikal owed such a duty to AC-International, but not to the party-plaintiff in the case, AC-USA. *Id.*

*Second*, we reversed the district court's judgment that the $1.5 million damage award could be sustained by the jury's verdict on the contract claim once we reversed the district court on the misappropriation claim. We held that, as a matter of law, AC-USA had failed to prove actual damages on its consequential damages theory. *Id.* at 1370. AC-USA could, however, recover nominal damages because Silikal did breach the contract. *Id.* at 1368. At this point, only a nominal damages award and attorney's fees remained.

*Third*, we concluded that AC-USA is entitled to attorney's fees on its breach of contract claim notwithstanding that it failed to prove actual damages because, under Georgia law, even a nominal damages award would still materially alter the legal relationship between the parties, so that AC-USA was the "prevailing party." *Id.* at 1375. We vacated the $1,361,415 attorney's fees award, however, and remanded the case to the district court for determination of an appropriate attorney's fee consistent with the opinion. *Id.*

*Finally*, we held that the "permanent" injunction issued by the district court and affirmed by this Court earlier in the case was actually preliminary in nature and had "dissolved" when the district court did not include a permanent injunction in its final judgment. *Id.* at 1360 n.25. We remanded the case to the district court

"for a determination of the sum of nominal damages and attorney's fees to which AC-USA is entitled." *Id.* at 1375.

On remand, the district court explained that it understood *AcryliCon II* this way: "Although the Eleventh Circuit vacated the judgment under the Georgia Trade Secrets Act, this did not disturb this Court's finding that AcryliCon was also entitled to recover its attorneys' fees and costs under the Global Settlement Agreement." D.E. 575 at 3. Notwithstanding that we directed that judgment be entered for Silikal on the misappropriation claim and held that AC-USA could not prove actual damages on its breach of contract claim as a matter of law, the district court awarded nearly the same amount of attorney's fees on remand, subtracting only $66,396.15 for the expenses of AC-USA's damages expert. D.E. 589 at 2; D.E. 575 at 3. Next, the district court acknowledged that "Silikal succeeded in getting the Court of Appeals to vacate the judgment awarding the Plaintiff compensatory and punitive damages." D.E. 575 at 3. Therefore, it reasoned, Silikal "was the prevailing party on the appeal under the terms of the [agreement]" and was entitled to $485,325.00 in attorney's fees for its successful appeal. *Id.* at 3–4.

Last, the district court awarded $100 in nominal damages to AC-USA for its successful breach of contract claim and entered a permanent injunction enjoining Silikal "from disclosing or using in any way, directly or indirectly, the 1061 SW resin or the formula for the 1061 SW resin and from selling or distributing the 1061 SW

resin to anyone other than the Plaintiff, unless the Plaintiff consents otherwise in writing." D.E. 589 at 1–2.

The parties timely cross-appeal. AC-USA appeals the award of appellate attorney's fees to Silikal, and Silikal appeals the entry of a permanent injunction and the amount of attorney's fees awarded to AC-USA. Silikal also asks us to reassign the case to a different judge.

## II.

We review *de novo* the district court's interpretation of our mandate. *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). We review fees and costs awards for abuse of discretion. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017). A "district court by definition abuses its discretion when it makes an error of law." *Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) (quotation marks omitted). And we review *de novo* a district court's interpretation of a contract's prevailing-party, fee-shifting provision. *Frankenmuth Mut. Ins. Co. v. Escambia Cnty.*, 289 F.3d 723, 728 (11th Cir. 2002).

## A.

We begin with the district court's entry of a permanent injunction. The long history of this case and its trips back and forth to our Court have created some confusion about whether a permanent injunction was originally entered in this case. We do our best to clear it up now.

In February 2016, the district court "*permanently* enjoined" Silikal from "disclosing or using in any way, directly or indirectly, the 1061 SW resin or the formula for the 1061 SW resin and from selling or distributing the 1061 SW resin to anyone other than the Plaintiff, unless the Plaintiff consents otherwise in writing."   D.E. 219 at 9 (emphasis added).  Silikal took an interlocutory appeal of that order.  We affirmed the injunction, calling it alternatively "preliminary" and "permanent" from one sentence to the next.  *Acryl-iCon I*, 692 Fed. App'x. at 617–18.  That was not a model of clarity for the district court or the parties.

But when the district court entered its original final judgment on August 16, 2017, the order made no mention of injunctive relief at all.  *See generally* D.E. 449.  Therefore, we clarified in *AcryliCon II* that "[w]hile the District Court called the injunction permanent, it was in fact preliminary.  The injunction therefore dissolved when the Court entered its final judgment."  985 F.3d at 1360 n.25.  We explained our ruling this way:

> A preliminary injunction only becomes a permanent injunction when the district court includes a permanent injunction in its final judgment.  *See Associated Builders & Contractors Fla. E. Coast Chapter v. Miami-Dade Cnty.*, 594 F.3d 1321, 1323–24 (11th Cir. 2010) (per curiam) ("Once an order of permanent injunction is entered, any preliminary injunction merges with it . . . .").

Here, the District Court entered the injunction against Silikal when it granted AC-USA's partial motion for summary judgment on the Contract claim. The Court's entry of summary judgment decided only the issue of liability, not damages. For that reason, it was not a final judgment, and the injunction was preliminary. *See Fort v. Roadway Express, Inc.*, 746 F.2d 744, 747 (11th Cir. 1984) ("A final judgment is generally recognized as being an order of the court which 'leaves nothing for the court to do but execute on the judgment.'") (citation omitted); *Warren Publishing, Inc., v. Microdos Data Corp.*, 115 F.3d 1509, 1511 n.1 (11th Cir. 1997) (en banc); *see also Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976). The Court did not include a permanent injunction in its final judgment, and the preliminary injunction therefore dissolved when the Court entered its final judgment. AC-USA has not filed a cross-appeal challenging the Court's failure to include a permanent injunction in its final judgment, so we will not address the issue on appeal.

*Id.*

Thus, it was the law of the case that no permanent injunction against Silikal had ever been entered by the district court. *See This That & the Other Gift & Tobacco, Inc. v. Cobb Cnty.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (quotation marks omitted) ("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent

proceedings in the same case in the trial court or on a later appeal.").[2] Nonetheless, when, on remand from *AcryliCon II*, AC-USA asked the district court to "reaffirm its permanent injunction," *see* D.E. 549 at 3, the district court agreed, reasoning:

> reentering the permanent injunction is not inconsistent with the mandate of *AcryliCon II* and not reentering the injunction would be inconsistent with the mandate of *AcryliCon I*.  Therefore, the Plaintiff's Motion for Permanent Injunction [Doc. 569] is GRANTED.

D.E. 575 at 2.  The district court's interpretation of the interplay between our two previous opinions amounts to legal error.  *AcryliCon II* made it crystal clear that no permanent injunction had been entered once the district court entered its final judgment.  Thus, we must vacate the district court's entry of a permanent injunction.

What's more, even if the district court had not made a mistake of law, it failed to make the requisite findings under Federal Rules of Civil Procedure 60 and 65.  Rule 60 allows a federal district court to give "relief from a judgment or order," usually by

---

[2] Even if it were the law of the case after *AcryliCon I* that the entry of a permanent injunction had been affirmed -- and that is not at all clear from our ruling in *AcryliCon I* -- neither the *AcryliCon II* panel nor this panel would be bound by that determination because clear legal error is an exception to the law-of-the-case doctrine.  *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370–71 (11th Cir. 2003) ("Indeed, the [Supreme] Court made clear that the 'clear error' exception to the law-of-the-case doctrine applies to legal errors.").

amending that judgment or order.  Fed. R. Civ. P. 60 (capitalization omitted).  Rule 65, in turn, lays out the procedural requirements and legal and factual findings a district court must make before it may enter any injunctive relief.  Fed. R. Civ. P. 65.

First, Rule 60.  As is clear by now, no permanent injunction was entered when the district court entered its first final judgment on August 16, 2017.  Nor was the question of whether a permanent injunction had been properly entered by the district court before our Court.  The panel put it this way: "AC-USA has not filed a cross-appeal challenging the Court's failure to include a permanent injunction in its final judgment, so we will not address the issue on appeal."  *AcryliCon II*, 985 F.3d at 1360 n.25.  So, if the district court wanted to enter a permanent injunction in 2021 -- five years after it entered the preliminary injunction -- it needed to amend its original final judgment.

Although AC-USA posits that the district court could have done so using Rule 60(a) of the Federal Rules of Civil Procedure to provide injunctive relief, as we see it, Rule 60(b) is the only governing rule arguably applicable here.  Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment."  Fed. R. Civ. P. 60(a).  Rule 60(a) does not fit these circumstances because this is not nearly a "clerical mistake."  "While the district court may correct clerical errors to reflect what was intended at the time of ruling, '[e]rrors that affect substantial rights of the parties . . . are beyond the scope of rule 60(a).'"  *Weeks v. Jones*, 100 F.3d 124, 128

(11th Cir. 1996). *See also Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992) (noting a district court is not permitted "to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect"). The substantive rights of the parties are most assuredly affected by the entry of a permanent injunction limiting what Silikal could do with its 1061 SW resin.

> Rule 60(b), in turn, reads this way:
>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  A motion under subsections (1), (2), or (3) must be made within a year after the entry of the judgment.  Fed. R. Civ. P. 60(c)(1).  AC-USA seeks to amend a judgment entered in 2017; at the earliest, its motion to amend under Rule 60(b) would be filed in 2022 -- far too late for relief under the Rule.[3]  Moreover, AC-USA is not claiming that the judgment is void (Rule 60(b)(4)) or, pursuant to Rule 60(b)(5), that the judgment has been satisfied, released, or discharged.

That leaves only Rule 60(b)(6), pursuant to which a motion must be made "within a reasonable time."  Fed. R. Civ. P. 60(c)(1). Rule 60(b)(6) is a catchall provision that is available only when Rules 60(b)(1) through (b)(5) are inapplicable.  *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022).  And even then, "extraordinary circumstances" must justify relief.  *Id.* (quotation marks omitted). AC-USA did not move for Rule 60(b)(6) relief in district court and its availability was not briefed in this Court, so we express no opinion as to whether the district court could or should grant such relief under Rule 60(b)(6).

---

[3] Rule 60(c)(1)'s one-year time limit is not extended by the pendency of an appeal. *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 791 (5th Cir. 1971). *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

We reject, however, Silikal's claim that a newly entered permanent injunction was barred by this Court's holding in *AcryliCon II*. It accurately cites the mandate rule, which "is a specific application of the 'law of the case' doctrine which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case." *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008) (quotation marks omitted). But the mandate rule does not and could not extend to issues the appellate court never addressed, and thus, the district court is free to address, as a matter of first impression, those issues not disposed of on appeal. *See Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 846 (11th Cir. 2021).

Moreover, the district court erred in including a permanent injunction on remand for an additional reason -- it did not make the required Rule 65 findings. Rule 65(d) is unambiguous in prescribing that "[e]very order granting an injunction" must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). In considering whether to grant a permanent injunction, a court must address whether the plaintiff has demonstrated the following:

> (1) [the plaintiff] has suffered an irreparable injury;
> (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) considering the balance of hardships between the

plaintiff and defendant, a remedy in equity is war-
ranted; and (4) the public interest would not be dis-
served by a permanent injunction.

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200,
1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547
U.S. 388, 391 (2006)).

The district court made many, if not all, of these findings
when it entered the February 2016 preliminary injunction.  D.E.
219 at 6–7.  But as we have held, that injunction dissolved when it
was not included in the district court's original final judgment; and
there were no Rule 65 findings made in its final judgment after re-
mand. D.E. 575.  If the district court intended to enter a permanent
injunction, it had to make the appropriate findings of fact and draw
the proper conclusions of law.

In short, the district court erred by including a permanent
injunction for three reasons.  It mistakenly believed that the entry
of an injunction was required by the mandate in *AcryliCon I*; it pro-
vided no basis for amending its original final judgment four years
later pursuant to Rule 60(b)(6); and it did not make the requisite
Rule 65 findings.  If AC-USA moves the district court and the court
intends to amend the judgment to enter a permanent injunction on
remand, the district court must do so in accordance with the re-
quirements found in Rule 60(b)(6) and Rule 65.

**B.**

Next, we consider Silikal's claim that the district court abused its discretion when it awarded AC-USA nearly the full amount of attorney's fees it had sought, even after we reversed significant portions of AC-USA's relief in *AcryliCon II*. Since the district court failed on remand to separate out what portion of the attorney's fees were fairly attributable to each claim, it committed legal error under Georgia law and abused its discretion. *See Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1153 (11th Cir. 2019) (quotation marks omitted) (noting that "[a]n error of law is an abuse of discretion *per se*").

To refresh: After trial, the district court awarded AC-USA $1,361,415 in attorney's fees for its success on the breach of contract claim and the misappropriation claim, for obtaining $4.5 million in total damages, and for winning a permanent injunction. In *AcryliCon II*, however, we concluded that AC-USA's misappropriation claim failed as a matter of law, that it was entitled to only nominal damages on its breach of contract claim, and that no injunction had been entered. Thus, we vacated the attorney's fee award and remanded for a new determination of legal fees based on a profoundly different legal landscape. The district court then awarded AC-USA $1,295,018.89 in attorney's fees, reducing the prior award by only $66,396.15 for the expenses of the AC-USA's damages expert. D.E. 589 at 2; D.E. 575 at 3.

Under the "well settled law" of Georgia, "a 'lump sum' recovery for fees associated with claims on which a litigant does not prevail is not authorized." *Huggins v. Chapin*, 233 Ga. App. 109,

109 (1998) (citing *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145 (1996)). A court awarding attorney's fees must have sufficient evidence "to distinguish between time and expenses attributable to the successful [ ] claim and time and expenses attributable to [an attorney's] other unsuccessful claims." *S. Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (1993). Where previous relief has been vacated on appeal, Georgia's courts have vacated the award of attorney's fees and required the trial court to "conduct an evidentiary hearing and apportion the attorney fees award to the amount attributable only to claims upon which [the plaintiff] prevailed." *Internal Med. All., LLC v. Budell*, 290 Ga. App. 231, 240 (2008). We've applied essentially the same requirement when evaluating attorney's fee awards under federal law. *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1293 (11th Cir. 2021) (directing the district court on remand to determine what portion of the fees incurred is fairly attributable to defending against each claim and to exclude fees incurred in defending on the non-frivolous claim from the ultimate fee award).

The district court awarded an impermissible "lump sum" on remand. It wrote that "AcryliCon's entitlement to attorneys' fees and costs was not changed by the Eleventh Circuit's ruling in *AcryliCon II*," but it included no analysis about how much of the approximately $1.3 million fee award was attributable to counsel's work on the breach of contract claim (for which AC-USA only recovered nominal damages), and how much of AC-USA's work was attributable to the misappropriation claim, which it lost. D.E. 575 at 2–3.

Nor did AC-USA submit that information to the district court.  In its motion for entry of judgment after remand, AC-USA simply referred to its previous motion and briefing on costs and fees and argued that *AcryliCon II* did not change its entitlement to attorney's fees.  D.E. 549 at 4.  It offered to "comply with any direction from the Court" if the district court chose "to employ a different process as to an award of fees and costs[.]" *Id.* at 5.  This is backwards.  The fee applicant bears the burden of proving the amount of attorney's fees expended and also the reasonableness of those fees.  *See Cotto L. Grp., LLC v. Benevidez*, 362 Ga. App. 850, 860 (2022); *see also Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 750 (2000) (explaining that the party seeking fees has "the burden of proof and must segregate out the hours that are recoverable from those hours not recoverable") (quotation marks and citation omitted).

We agree with Silikal that AC-USA's burden was not met here.  On this record, we cannot tell, for example, how many hours AC-USA's counsel spent prosecuting its breach of contract case as opposed to how much time counsel spent on the failed misappropriation claim.  This may be important in fashioning an appropriate fee award because early in this long litigation, Silikal admitted to a technical breach of the settlement agreement and offered to pay a judgment of $152,000 in damages and an additional $228,000 in attorney's fees.  D.E. 47.  AC-USA is left, then, after years of litigation and appeals, with only a finding of liability on the contract claim (under which Silikal admitted its liability years ago) and $100 in nominal damages -- $151,900 below what Silikal initially offered.

As Silikal puts it, "the trial produced literally no relief to AC-USA." Silikal Br. at 33. Even if the amount of attorney's fees would be substantively reasonable based on the remaining relief after *Acryl-iCon II*, the bottom line is that the district court must still "provide this Court with a yardstick by which we may judge whether the award is reasonable." *See Huggins*, 233 Ga. App. at 110.

AC-USA does not dispute its burden, nor that the district court must apportion fees between successful and unsuccessful claims, but rather it argues that the breach of contract claim and the misappropriation claim were "so similar that it would be too difficult to separate the hours spent on each[.]" *Krayev v. Johnson*, 327 Ga. App. 213, 223 (2014) (quotation marks omitted). *See* AC-USA Br. at 16. It is true that, where the work performed on each claim substantially overlaps with the other, a court may base its award, at least in part, on the unsuccessful claim. *See Huggins*, 233 Ga. App. at 110. The district court, however, made no such finding.[4]

---

[4] We note, preliminarily, that it may not be so easy to establish that the two claims are "intertwined." *See Huggins*, 233 Ga. App. at 110. Silikal conceded its breach of contract early in the litigation; the breach of contract claim is governed by the agreement between the parties, while the misappropriation claim is a statutory claim governed by Georgia law, and the misappropriation claim requires AC-USA to prove that the information is a "trade secret" and that Silikal "misappropriated" that trade secret. *See* GA. CODE ANN. § 10-1-760–767. (2020).

The district court abused its discretion by failing to determine what portion of the attorney's fees incurred was fairly attributable to the successful breach of contract claim as opposed to the unsuccessful misappropriation claim. On remand, the district court must apportion the attorney's fees between the two claims based on AC-USA's specific and detailed billing records or conclude -- based on the evidence -- that it would be impracticable in whole or in part to separate the legal work performed on the various claims.

## C.

The district court also awarded attorney's fees to Silikal for its successful appeal in *AcryliCon II*. The trial court offered this rationale: "Silikal succeeded in getting the Court of Appeals to vacate the judgment awarding the Plaintiff compensatory and punitive damages. Therefore, the Defendant was the prevailing party on the appeal under the terms of the Global Settlement Agreement." D.E. 575 at 3. AC-USA, as cross-appellant, appeals the $485,325.00 fee award because, it argues, the settlement agreement contemplates that there could be only *one* prevailing party -- and that is AC-USA. We agree with AC-USA that Silikal is not a prevailing party, albeit for a different reason, and reverse the district court's award of appellate attorney's fees.

The relevant provision of the agreement between the parties reads this way:

> If legal proceedings are commenced in connection with this Settlement Agreement, the Settling Party or Parties that do not prevail in such legal proceedings shall pay the reasonable attorneys' fees and other costs and expenses, including investigation costs, incurred by the prevailing party in such legal proceedings.

D.E. 561-1 ¶ 16. AC-USA hangs its hat on the agreement's use of the term "the" prevailing party, arguing that the agreement allows for only one party that would be entitled to fees. It also claims that, even though the agreement uses the plural "legal proceedings," the trial and numerous appeals were all part of the same legal proceeding, for which there could be only one prevailing party. Silikal argues the exact opposite. It claims that *AcryliCon II* was a separate legal proceeding "because that appeal was 'authorized or sanctioned by law' and was brought by Silikal in this Court when it filed its appeal." Silikal Reply Br. at 30. And because Silikal "prevailed" in *AcryliCon II*, it is also "the prevailing party." *Id.* at 27.

But before reaching the issue of contractual interpretation to which the parties direct us, we consider whether Silikal was a "prevailing party" at all. Under Georgia law, Silikal is not a prevailing party and therefore is not entitled to attorney's fees, even if its interpretation that the agreement allows for multiple prevailing parties is otherwise correct. In *Benchmark Builders, Inc., v. Schultz*, the Supreme Court of Georgia interpreted a contractual fee-shifting clause like the one at issue here. *See* 294 Ga. 12, 13 (2013). The court reasoned that that clause entitled "the prevailing

party" to "recover reasonable attorney's fees from the other party." *Id.* (quotation marks omitted). The court explained, "[u]nlike plaintiffs who typically must obtain some affirmative relief on their claim to be deemed the 'prevailing party,' . . . *defendants prevail by not having any relief imposed against them.*" *Id.* at 14 (emphasis added). Even if we assume that *AcryliCon II* constituted a separate legal proceeding, Silikal cannot be considered a prevailing party under Georgia law because this Court held that AC-USA was entitled to nominal damages on its contract claim. And, as we explained in that opinion, an award of nominal damages standing alone is sufficient to materially alter the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *AcryliCon II*, 985 F.3d at 1375.

Therefore, even though Silikal won substantial relief from its appeal, it is not the "prevailing party" under the agreement because *some* relief was imposed against it. It should not have been awarded attorney's fees.

## D.

Finally, we reject Silikal's request to have this case reassigned on remand. It offers three reasons why the district court, purportedly, is unable to set aside its previous views and enforce this Court's mandate. First, it says, the district court entered injunctive relief despite this Court's express reasoning found in footnote 25 of *AcryliCon II*. Second, it notes that the district court awarded nearly identical attorney's fees on remand. And third, it

suggests that the district court made some harsh comments about Silikal's litigation strategy.

None of these factors, nor anything else in the record, warrants so severe a remedy, which is "only appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public." *Comparelli v. Republica Bolivariana de Venez.*, 891 F.3d 1311, 1328 (11th Cir. 2018) (quotation marks omitted).

Where there is no allegation of actual bias, three factors inform our decision to reassign a case on remand:

> (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to the gains realized from reassignment.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 (11th Cir. 1997) (quotation marks and citation omitted).

The district court's conclusion that *AcryliCon I* compelled the entry of a permanent injunction on remand from *AcryliCon II* was error, but it was not willful or malicious and it in no way suggests that this able and experienced trial judge would have difficulty setting aside his previous views. As we have already observed, our opinion in *AcryliCon I* affirmed the preliminary injunction the

district court initially entered, but characterized it as a "permanent injunction" several times, as well as a "preliminary injunction" several times -- perhaps reflecting the district court's terminology. Although *AcryliCon II* cleared up any lingering doubt about this matter, we deny the reassignment request when the district court read our earlier decision "mistakenly, but reasonably." *See Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1194 (11th Cir. 2015).

Nor does the district court's attorney's fee award support reassignment. Silikal claims this shows the district court's "unwillingness even to deal meaningfully with this case." Silikal Br. at 40. Although the district court needed to explain more of its work when it awarded nearly the same amount of attorney's fees, this does not justify the harsh remedy of reassignment. This misstep "seem[s] more akin to garden-variety errors of law than the kind of direct defiance or stalemated posture that requires reassignment." *See Sovereign*, 809 F.3d at 1193 (quotation marks omitted). We have no reason to believe the district court will not comply with the mandate of this Court.

Finally, the district court's comments, while barbed, do not undermine the appearance of justice. The district court wrote, for example, "[g]iven the Defendant's litigation strategy of making this case as difficult and time consuming for the Plaintiff and the Court, it is not unfair to award both exemplary damages and attorneys'

fees under the Georgia Trade Secrets Act." D.E. 515 at 4. It also wrote that "[i]n the end, the Defendant as usual talks a big game but provides no reasonable basis for disputing the Plaintiff's claim. . . . Again as usual the Defendant relies upon heated rhetoric rather than evidence." *Id.* at 5. Last, the trial court characterized an earlier Silikal motion as "another poorly disguised and untimely motion for summary judgment." D.E. 344.

While these comments may evince a disdain for the litigation strategy of Silikal's counsel, we've declined to reassign a case after far sharper commentary. In *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order*, the district court said that, "although it understood that the parties presented themselves as Christian charities, it 'struggle[d] with the parties' characterizing themselves in that manner.'" 702 F.3d 1279, 1297 (11th Cir. 2012) (alteration in original). The district court also remarked that members of both organizations "[were] more interested in dressing up in costumes, conferring titles on each other and playing in a 'weird world of princes and knights' than in performing charitable acts." *Id.* Still, we did not reassign the case. Here, the district court's comments are unlike those found in *Sovereign* and they are actually related to the legal merits of the case. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that a judge's impatience and annoyance did not justify disqualification).

We are confident in the district court's ability to preside fairly and efficiently over this case, and so we discern no reason to reassign the matter on remand.

We **VACATE** the permanent injunction entered against Silikal, **VACATE** the attorney's fee award to AC-USA, and **VACATE** the appellate attorney's fee award to Silikal.   We **REMAND** for further proceedings consistent with this opinion, including a determination of reasonable attorney's fees to AC-USA.